UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦

**Estate of Barbara Pew (Deceased), John Pew, Jr.,
Individually and as Executor of the Estate of
Barbara E. Pew, Harold Pew, Donna Pew, H. Nancy
Hann, Julia Hudasky, and Kathleen Prickett, on
behalf of themselves and all others similarly situated,**

                       **Plaintiffs,**                             **5:05-CV-1317**

        **-v-**

**Donald P. Cardarelli, Peter J. O'Neill, and
Pricewaterhousecoopers LLP,**

                       **Defendants.**
✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦

| APPEARANCES: | OF COUNSEL: |
|---|---|
| Mackenzie Hughes LLP<br>101 South Salina Street<br>PO Box 4967<br>Syracuse, New York 13221-4967<br>and | David M. Garber, Esq. |
| Wechsler Harwood, LLP<br>488 Madison Avenue, 8th Floor<br>New York, New York 10022<br>Attorneys for Plaintiffs | Robert I. Harwood, Esq.<br>William R. Weinstein, Esq.<br>Joshua Davlid Glatter, Esq. |
| Wilmer, Cutler, Pickering, Hale & Dorr, LLP<br>2445 M Street, N.W.<br>Washington, D.C. 20037<br>and | Charles E. Davidow, Esq. |
| Hiscock & Barclay, LLP<br>One Park Place<br>300 South State Street<br>P.O. Box 4878<br>Syracuse, New York 13221-4878<br>Attorneys for Defendants Donald P. Cardarelli and Peter J. O'Neill | Douglas J. Nash, Esq. |
| Hancock, Estabrook, LLP<br>1500 MONY Tower I<br>Syracuse, New York 13221<br>and | Daniel B. Berman, Esq. |
| Orrick, Herrington & Sutcliffe, LLP<br>3050 K Street, N.W.<br>Washington, D.C. 20007<br>and | Diana L. Weiss, Esq. |
| Orrick, Herrington & Sutcliffe, LLP<br>666 Fifth Avenue<br>New York, New York 10103-0001<br>Attorneys for Defendant Pricewaterhousecoopers, LLP | James J. Capra, Jr., Esq. |

**Hon. Norman A. Mordue, Chief U.S. District Judge:**

**MEMORANDUM-DECISION AND ORDER**

**INTRODUCTION**

Presently before the Court is plaintiffs' motion (Dkt. No. 8) to remand this putative class action on the ground of lack of subject-matter jurisdiction or mandatory abstention. The complaint seeks to recover damages based on defendants' alleged violation of section 349 of New York General Business Law in connection with the sale of securities issued by Agway, Inc. ("Agway"), an agricultural cooperative. This action involves the same parties and is based on the same transactions as were the subject of a previous action before this Court (No. 03-CV-742) alleging violations of federal securities law and New York law. On March 17, 2005, this Court dismissed the amended complaint in that action with prejudice, except for the single state law claim under section 349 of New York General Business Law, which the Court dismissed without prejudice. The Second Circuit affirmed. *See Pew v. Cardarelli*, 2005 WL 3817472 (N.D.N.Y.), *aff'd* 164 Fed.Appx. 41 (2d Cir. 2006). The present action, filed in New York State Supreme Court on September 22, 2005, and removed by the individual defendants to district court on October 19, 2005, is a reassertion of the state law claim. For the reasons set forth below, the Court grants plaintiffs' motion to remand to state court.

**THE COMPLAINT**

Plaintiffs seek to recover damages allegedly stemming from defendants' violations of New York law in connection with the sale of Subordinated Money Market Certificates ("Certificates") offered by Agway. Plaintiffs, who sue on behalf of a putative class defined as all persons who acquired Certificates during the class period, claim that defendants made false and misleading statements in the applicable Registration Statements, Annual Reports, Quarterly Reports and Current Reports filed with the Securities and Exchange Commission ("SEC") during the relevant period, in violation of section 349 of New York General Business Law. Defendant Donald P. Cardarelli, then Agway's Chief Executive Officer, and defendant Peter J. O'Neill, then Agway's

Senior Vice President of Finance and Control, signed allegedly false and misleading Registration Statements and other SEC filings during the class period.  Defendant PricewaterhouseCoopers LLP ("Pricewaterhouse"), an accounting firm, audited Agway's financial statements and issued allegedly false and misleading audit reports which, with the knowledge and express consent of Pricewaterhouse, were incorporated into and made part of Agway's Registration Statements and Annual Reports filed with SEC during the class period.

Agway traditionally financed much of its working capital with proceeds from the sales of Certificates, which were fixed-interest debt instruments subordinated to Agway's other debt.  Plaintiffs purchased Certificates during the period from November 1, 2000, through November 3, 2001, pursuant to the 1998 Registration Statement (filed August 31, 1998, effective September 21, 1998) and the 2001 Registration Statement (filed April 30, 2001, effective July 9, 2001).  On March 6, 2002, Agway announced a temporary suspension of sales of Certificates; it never resumed selling them.  On June 17, 2002, Agway announced the suspension of its practice of repurchasing Certificates prior to maturity.  Agway's turnaround efforts failed and on September 30, 2002, it announced its intention to file a petition for reorganization under Chapter 11 of the Bankruptcy Code.  It filed the petition in October 2002.

Plaintiffs claim that defendants made numerous false and misleading statements in the following SEC filings relevant to the Certificates issued to and purchased by the class: the 1998 and 2001 Registration Statements (Forms S-3), which incorporated by reference all pertinent annual, quarterly and current reports, and which included by consent the Pricewaterhouse unqualified audit reports for the relevant fiscal years ending in June 1999, 2000 and 2001; the 2000 and 2001 Annual Reports (Forms 10-K), which included by consent the Pricewaterhouse unqualified audit reports; the five Quarterly Reports (Forms 10-Q) for the quarters ending September 2000, December 2000, March 2001 and December 2001; and the two Current Reports (Forms 8-K) dated March 1, 2001 and March 31, 2001.  All of these documents were signed

either by O'Neill alone or by O'Neill and Cardarelli.

More particularly, in paragraph 97 of the complaint, plaintiffs claim that statements in the Registration Statements and incorporated SEC filings were "materially deceptive, untrue and misleading because they either concealed or failed to disclose" that:

> (i) Agway was insolvent from the beginning of the Class Period because the value of its assets during that time, even in complete liquidation, was insufficient by hundreds of millions of dollars to discharge its Money Market Certificate-related liabilities; (ii) the only substantial liquid source of funds available to discharge the hundreds of millions of dollars of Money Market Certificates maturing during the Class Period and thereafter was "other peoples' money" derived from the sale of the new Money Market Certificates; (iii) because substantially all of Agway's most valuable assets were either pledged to senior debt or otherwise unavailable in connection with maturity obligations, the sale of Agway's presently available assets would be insufficient to fully satisfy its payment obligations with respect to the currently maturing Money Market Certificates, let alone newly sold Certificates; (iv) the potential proceeds from substantially dismantling all of Agway's remaining businesses (the antithesis of a "going concern") were only a fraction of the Money Market Certificates outstanding and maturing in the future; (v) Agway's inability to satisfy its obligations concerning the maturing Money Market Certificates from the results of its operations created serious doubt as to whether Agway could continue as a "going concern," and the imminent risk of default; and (vi) therefore, at the time of purchase, the newly issued Money Market Certificates were worth, at most, only a small fraction of the face amount that Agway collected from plaintiffs and the Class.

Paragraph 98 states:

> In short, during the Class Period, Agway's Registration statements and incorporated SEC filings were materially deceptive, untrue and misleading, *inter alia*, because they either concealed or failed to disclose that Agway's existing insolvency from the beginning of and throughout the Class Period exceeded several hundred million dollars, and that the continuing sale of Money Market Certificates during the Class Period to Agway's farmer-members was in essence a Ponzi scheme intended solely to keep Agway afloat without any possibility of discharging the newly sold Money Market Certificates.

Plaintiffs claim that at the time they acquired the Certificates, neither they nor any class member knew or by the exercise of reasonable care could have known of the facts concerning the inaccurate and misleading statements and omissions. Based on these allegations, the complaint asserts that defendants engaged in materially deceptive acts or practices in the conduct of

-4-

business, trade or commerce in violation of section 349 of New York General Business Law.

Section 349 of New York Business Law provides in subdivision (a): "Deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful." Subdivision (h) affords a private cause of action to "any person who has been injured by reason of any violation of this section." The complaint avers that section 349 applies to "virtually all economic activity," citing *Karlin v. IVF Am., Inc.*, 93 N.Y.2d 282, 290 (1999), and states: "Its application here is particularly appropriate in light of, *inter alia*, the decades long membership relationship between Agway and its farm members, the fact that none of the Money Market Certificates here was traded on any market, and the fact that the name 'Money Market Certificates' in and of itself is confusing to plaintiffs and other members of the Class." The complaint adds: "Its application here is also particularly appropriate in light of the fact that plaintiffs and the Class have lost their money by means of a quintessentially deceptive act and practice, the Ponzi scheme, which was originated and fully orchestrated out of Agway's headquarters in New York State." Plaintiffs seek class certification, a declaration that defendants have violated section 349 of New York General Business Law, and an award of money damages.

**THE MOTION**

In the Notice of Removal (Dkt. No. 1), defendants assert two grounds for jurisdiction in Federal Court: diversity jurisdiction under the Class Action Fairness Act, and jurisdiction based on the relationship between this action and Agway's bankruptcy proceedings in United States Bankruptcy Court in the Northern District of New York.

**Jurisdiction Under the Class Action Fairness Act**

*Class Action Fairness Act, Generally*

Effective February 18, 2005, the Class Action Fairness Act ("CAFA"), P.L. 109-2, 119 Stat. 4, extends federal diversity jurisdiction to cover class actions in which the amount in controversy exceeds $5 million, the putative class consists of more than 100 members, and any

class member is diverse from any defendant. *See* 28 U.S.C. § 1332(d)(2). It is undisputed that this action meets CAFA's general removal requirements. Plaintiffs contend, however, that an exception to CAFA deprives this Court of CAFA jurisdiction and compels remand. Plaintiffs rely on section 1332(d)(9)(C), which exempts from CAFA jurisdiction any class action that "solely involves a claim ... that relates to the rights, duties (including fiduciary duties), and obligations relating to or created by or pursuant to any security[.]"

### *Burden of Proof*

The general rule is that "[w]hen a party removes a state court action to the federal court on the basis of diversity of citizenship, and the party seeking remand challenges the jurisdictional predicate for removal, the burden falls squarely upon the removing party to establish its right to a federal forum by 'competent proof.'" *R. G. Barry Corp. v. Mushroom Makers, Inc.*, 612 F.2d 651, 655 (2d Cir. 1979) (quoting *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936). Although the legislative history of CAFA reflects the Senate's desire to place on plaintiffs in a removed class action the burden of demonstrating that the action should be remanded to state court, *see* S. Rep. 14, 109th Cong. 1st Sess. 42 (2005), no such provision was included in CAFA as enacted. Accordingly, this Court applies the traditional rule and places the burden on the removing party, here the defendants. *See Miedema v. Maytag Corp.*, 450 F.3d 1322, 1328 (11th Cir. 2006); *Abrego Abrego v. Dow Chem. Co.*, 443 F.3d 676, 686 (9th Cir. 2006); *Brill v. Countrywide Home Loans, Inc.*, 427 F.3d 446, 448 (7th Cir. 2005).

### *Date of Commencement of Action*

Defendants contend that CAFA applies here because the instant complaint was filed on September 22, 2005, subsequent to CAFA's effective date of February 18, 2005. *See* Pub.L. No. 109-2, § 9, 119 Stat. 4, 14 (2005). Plaintiffs counter that the commencement date of this action should be deemed to be the commencement date of the previous action (Dkt. No. 03-CV-742) which was filed June 13, 2003, prior to CAFA's enactment.

Plaintiffs' argument lacks merit. It is true that, under section 205(a) of New York Civil Practice Law and Rules, when a federal court dismisses on jurisdictional grounds a claim that was timely commenced in the first instance, the plaintiff may file that claim in state court within six months thereafter. *See* N.Y.C.P.L.R. 205(a); *Soap Opera Now, Inc. v. Network Pub. Corp.*, 737 F.Supp. 1338, 1350 (S.D.N.Y. 1990). Section 205(a) does not, however, provide that the newly filed claim shall be deemed to have been filed as of the date of the initial action. Nor is there any other basis to deem the commencement date of this action to be the same as the commencement date of the previous action. Thus, the commencement date of this action is its filing date, September 22, 2005, subsequent to the effective date of CAFA.

*Section 1332(d)(9) Exceptions*

28 U.S.C. § 1332(d)(9) exempts from CAFA any class action that "solely involves" a claim:

> (A) concerning a covered security as defined under 16(f)(3) of the Securities Act of 1933 (15 U.S.C. 78p(f)(3))[1] and section 28(f)(5)(E) of the Securities Exchange Act of 1934 (15 U.S.C. 78bb(f)(5)(E));
>
> (B) that relates to the internal affairs or governance of a corporation or other form of business enterprise and that arises under or by virtue of the laws of the State in which such corporation or business enterprise is incorporated or organized; or
>
> (C) that relates to the rights, duties (including fiduciary duties), and obligations relating to or created by or pursuant to any security (as defined under section 2(a)(1) of the Securities Act of 1933 (15 U.S.C. 77b(a)(1)) and the regulations issued thereunder).

Section 1332(d)(9)(A) concerns "covered securities," that is, securities that are traded nationally or listed on a regulated national exchange. *See* 15 U.S.C. § 77r(b), *cited in* 15 U.S.C. §§ 77p(f)(3); 78bb(f)(5)(E). The parties to the instant action agree that the Certificates are not "covered securities" within the meaning of section 1332(d)(9)(A).

---

[1] Probably should be 15 U.S.C. 77p(f)(3), not 78p(f)(3).

The parties to this action also agree that the Certificates are "securities" as that term is used in section 1332(d)(9)(C). Section 1332(d)(9)(C) incorporates the broad definition of securities found in section 77b(a)(1)[2] and thus encompasses securities that are not traded nationally or listed on a regulated national exchange.[3]

Plaintiffs urge that they are entitled to remand pursuant to the exception to CAFA jurisdiction set forth in section 1332(d)(9)(C). Defendants contend that, although the Certificates are securities within the meaning of section 1332(d)(9)(C), the section 1332(d)(9)(C) exception does not apply, because this action does not "solely involve[]" a claim "that relates to the rights, duties..., and obligations relating to or created by or pursuant to" the Certificates.

*Discussion*

A plain reading of the complaint establishes that plaintiffs' claim falls within the section 1332(d)(9)(C) exception to CAFA jurisdiction because it "solely involves" a claim that "relates to the rights, duties ... and obligations relating to or created by or pursuant to" the Certificates. The

---

[2] Section 2(a)(1) of the Securities Act of 1933, 15 U.S.C. 77b(a)(1), provides:
> The term "security" means any note, stock, treasury stock, security future, bond, debenture, evidence of indebtedness, certificate of interest or participation in any profit-sharing agreement, collateral-trust certificate, preorganization certificate or subscription, transferable share, investment contract, voting-trust certificate, certificate of deposit for a security, fractional undivided interest in oil, gas, or other mineral rights, any put, call, straddle, option, or privilege on any security, certificate of deposit, or group or index of securities (including any interest therein or based on the value thereof), or any put, call, straddle, option, or privilege entered into on a national securities exchange relating to foreign currency, or, in general, any interest or instrument commonly known as a "security", or any certificate of interest or participation in, temporary or interim certificate for, receipt for, guarantee of, or warrant or right to subscribe to or purchase, any of the foregoing.

[3] In furtherance of its goal of protecting investors, Congress defined the term "security" in section 2(a)(1) of the Securities Act of 1933, 15 U.S.C. § 77b(a)(1), and its counterpart, section 3(a)(10) of the Securities Exchange Act of 1934, 15 U.S.C. § 78c(a)(10), in terms "sufficiently broad to encompass virtually any instrument that might be sold as an investment." *Reves v. Ernst & Young*, 494 U.S. 56, 61 (1990).

essence of plaintiffs' claim is that defendants engaged in deceptive acts and practices by misrepresenting and concealing the true nature of the investment represented by the Certificates.[4] According to plaintiffs, defendants' SEC filings led plaintiffs to believe that their purchase of the Certificates gave them rights as investors in a going concern, whereas in fact defendants' deceptions had drawn plaintiffs into a "Ponzi scheme" which gave them no such rights, because Agway was already insolvent and unable to satisfy the obligations it undertook in connection with the Certificates. Stated otherwise, the complaint claims that defendants' SEC filings led plaintiffs to believe that the Certificates represented rights which in fact were illusory, and created obligations which in fact Agway could not possibly fulfill. Further, this action "solely" involves this claim; plaintiffs' claim relates to no other rights, duties, or obligations.[5]

In support of their position that plaintiffs' claim does not fall within the section 1332(d)(9)(C) exception, defendants contend that the exception should be read to apply "only to claims that relate to the rights arising out of the security itself or the rights that a corporation's bylaws and other organizational documents confer[] on a holder of the corporation's securities" and to exempt only claims "based on [plaintiffs'] rights as securities holders" such as "voting rights, rights to receive dividends, rights upon liquidation, or any other claim arising from their ownership of the Certificates." The wording of section 1332(d)(9)(C) does not support such a restrictive reading. In referring to rights, duties and obligations "relating to" a security, as well as those "created by or pursuant to" a security, section 1332(d)(9)(C) covers not only rights, duties

---

[4] This Court takes no position regarding whether the complaint states a cause of action under New York law.

[5] That the SEC filings in issue are required by federal securities law does not alter the fact that plaintiffs' claim is based solely on state law; plaintiffs' claim here does not depend on a finding that the filings violated federal securities law. *See generally Indiana State Dist. Council of Laborers and Hod Carriers Pension Fund v. Renal Care Group, Inc.*, 2005 WL 2000658, *1 (M.D.Tenn.).

and obligations conferred by the terms of security itself, such as voting rights, but also those rights, duties and obligations that are connected with the security.[6]

In construing section 1332(d)(9)(C), it is significant that, while the reach of CAFA is extremely broad,[7] subdivision (d)(9) of section 1332 carves out a substantial exception for state law securities and business-related claims. This is the only category of claims that CAFA exempts based on the specific subject-matter of the litigation.[8] The three subparagraphs of subdivision (d)(9), read together, evince an overall legislative intention to maintain federal protection of "the integrity and efficient operation" of the market for nationally traded securities,[9] *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit*, 126 S.Ct. 1503, 1509 (2006), while preserving the significant role played by states in the regulation of business entities[10] and

---

[6] *Merriam-Webster Online Dictionary* defines "related" as "connected by reason of an established or discoverable relation."

[7] As noted above, CAFA extends federal diversity jurisdiction to cover class actions in which the amount in controversy exceeds $5 million, the putative class consists of more than 100 members, and any class member is diverse from any defendant. *See* 28 U.S.C. § 1332(d)(2). Thus, its reach extends to virtually any type of civil action.

[8] The only other exceptions to CAFA, found in section 1332(d)(3) and (4), apply to any type of action. They require the district court to consider factors bearing on the extent of a particular state's interest in the litigation, such as the proportion of the plaintiffs who are citizens of the state in which the action was originally filed, whether the action will be governed by the laws of that state, where the alleged conduct or injury occurred, and whether the claims involve matters of national or interstate interest.

[9] Section 1332(d)(9)(A) exempts from CAFA those class actions solely involving claims concerning securities which are traded nationally or listed on a regulated national exchange. (The Certificates in the instant case are not nationally traded.) Such claims are governed by the Securities Litigation Uniform Standards Act ("SLUSA"), 15 U.S.C. 77p; 78bb, which precludes both federal and state class actions asserting certain state-law claims involving nationally traded securities. *See generally Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit*, 126 S.Ct. 1503, 1511 (2006). The effect of section 1332(d)(9)(A) is to prevent CAFA from disturbing the impact of SLUSA on state and federal law affecting nationally traded securities.

[10] Section 1332(d)(9)(B) exempts class actions solely involving claims relating to the internal affairs

securities that are not nationally traded.[11]  *See, generally, Green v. Fund Asset Management, L.P.*, 245 F.3d 214, 222 n.7 (3d Cir. 2001) (noting that it is well-settled that federal securities laws do not occupy the entire field of corporate law or securities law; citing *Burks v. Lasker,* 441 U.S. 471, 477-80 (1979) (stating that federal statutes do not authorize federal courts to fashion a complete body of federal law in the area of corporation law), and *Baker, Watts & Co. v. Miles & Stockbridge*, 876 F.2d 1101, 1107 (4th Cir. 1989) ("It is well-settled that federal law does not enjoy complete preemptive force in the field of securities.... Congress has expressly preserved the role of the states in securities regulation.")).  When section 1332(d)(9)(C) is considered in this light, the restrictive construction advanced by defendants is unwarranted.

Viewed in the context of CAFA and the exceptions in section 1332(d)(9), section 1332(d)(9)(C) is properly construed to encompass the type of state-law securities-related claim asserted here.[12]  Thus, defendants have not established that this action falls outside the exception to CAFA in section 1332(d)(9)(C), and have not carried their burden of establishing federal subject-matter jurisdiction under CAFA.  Indeed, even if the burden were placed on plaintiffs to demonstrate that the section 1332(d)(9)(C) exception does apply, the complaint herein meets that burden.  This Court does not have subject-matter jurisdiction under CAFA.

**"Related to" Bankruptcy Jurisdiction and Mandatory Abstention**

---

or governance of a business entity and arising under state laws applicable to that entity, thus preserving the long-established rule that the law of the state of incorporation normally determines issues relating to the internal affairs of a corporation.  The rule meets "the need for certainty and predictability of result while generally protecting the justified expectations of parties with interests in the corporation."  *First Nat. City Bank v. Banco Para El Comercio*, 462 U.S. 611, 621 (1983) (citing RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 302, Comments a & e, (1971)).

[11] As noted above, such securities are included in the term "securities" in section 1332(d)(9)(C).

[12] Although the Court does not consider section 1332(d)(9)(C) to be ambiguous, and thus does not discuss its legislative history, there is nothing in the legislative history that undermines the Court's analysis.

Defendants also contend that district court has jurisdiction on the ground that this action is related to Agway's bankruptcy proceeding in United States Bankruptcy Court in the Northern District of New York. Defendants rely on "related to" bankruptcy jurisdiction as prescribed in 28 U.S.C. § 1334(b):

> [N]otwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11 [*i.e.*, the Bankruptcy Code], or arising in or related to cases under title 11.

District court has "related to" jurisdiction over a case if "its outcome might have any 'conceivable effect' on the bankrupt estate." *In re Cuyahoga Equip. Corp.*, 980 F.2d 110, 114 (2d Cir. 1992).

While the Court agrees with defendants that this action is "related to" Agway's bankruptcy proceeding within the meaning of section 1334(b), it is not necessary to discuss the issue, because remand is nevertheless required based on the mandatory abstention provision in 28 U.S.C. § 1334(c)(2). This provision states:

> Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

Having found no basis for federal jurisdiction except "related to" jurisdiction under section 1334(b), and finding that the other criteria of section 1334(c)(2) have been met, this Court is mandated by section 1334(c)(2) to abstain from hearing the instant action. *See generally Mt. McKinley Ins. Co. v. Corning, Inc.*, 399 F.3d 436, 447 (2d Cir. 2005); *Certain Underwriters at Lloyd's, London v. ABB Lummus*, 337 B.R. 22, 26 (S.D.N.Y. 2005). Accordingly, the case must be remanded to state court.

## CONCLUSION

It is therefore

ORDERED that the motion by plaintiffs (Dkt. No. 8) is granted; and it is further

ORDERED that this action is remanded to New York State Supreme Court.

IT IS SO ORDERED.

DATE:  December 6, 2006

Norman A. Mordue
Chief United States District Court Judge