UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦

**Estate of Barbara Pew (Deceased), John Pew, Jr., Individually and as Executor of the Estate of Barbara E. Pew, Harold Pew, Donna Pew, H. Nancy Hann, Julia Hudasky, and Kathleen Prickett, on behalf of themselves and all others similarly situated,**

                                        Plaintiffs,

                     -v-                                    5:05-CV-1317

**Donald P. Cardarelli, Peter J. O'Neill, and PricewaterhouseCoopers LLP,**

                                        Defendants.

✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦

APPEARANCES:

Wechsler Harwood LLP
Robert I. Harwood, Esq., of Counsel
William R. Weinstein, Esq., of Counsel
488 Madison Avenue, 8th Floor
New York, New York 10022
and
Mackenzie Hughes LLP
Jennifer Ploetz Williams, Esq., of counsel
101 South Salina Street, PO Box 4967
Syracuse, New York 13221-4967
Attorneys for Plaintiffs

Hiscock & Barclay  LLP
Douglas J. Nash, Esq., of Counsel
John D. Cook, Esq., of counsel
One Park Place, 300 South State Street
Syracuse, New York 13221-4878
and
Wilmer Cutler Pickering Hale and Dorr LLP
Peter K. Vigeland, Esq., of counsel
399 Park Avenue
New York, New York 10022
and
Wilmer Cutler Pickering Hale and Dorr LLP
Philip D. Anker, Esq., of counsel
1875 Pennsylvania Avenue N.W.
Washington, D.C. 20006
Attorneys for Defendants Donald P. Cardarelli and Peter J. O'Neill

Hancock, Estabrook LLP
Daniel B. Berman, Esq., of Counsel
1500 AXA Tower I
Syracuse, New York 13221
and
Orrick, Herrington & Sutcliffe LLP
Diana L. Weiss, Esq., of Counsel
1152 15TH Street N.W.
Washington, D.C. 20005-1706
and
Orrick, Herrington & Sutcliffe LLP
James J. Capra, Jr., Esq., of Counsel
666 Fifth Avenue
New York, New York 10103-0001
Attorneys for Defendant PricewaterhouseCoopers LLP

**Hon. Norman A. Mordue, Chief U.S. District Judge:**

### MEMORANDUM-DECISION AND ORDER

### INTRODUCTION

Presently before the Court is defendants' motion (Dkt. No. 24) to dismiss this class action for failure to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). The single cause of action is based on defendants' alleged violation of section 349 of New York General Business Law ("GBL § 349") in connection with the sale of securities issued by Agway, Inc. ("Agway"), an agricultural cooperative. For the reasons set forth below, the Court grants the motion and dismisses the complaint.

### BACKGROUND

In a previous action involving the same parties and based on essentially the same transactions (Case No. 5:03-CV-742), plaintiffs' amended complaint alleges that defendants, officers of Agway and Agway's auditor, violated section 11(a) of the Securities Act ("section 11"), 15 U.S.C. § 77k(a), and GBL § 349 by making false and misleading statements in public filings with the Securities and Exchange Commission ("SEC") regarding the sale of subordinated Money Market Certificates ("Certificates") offered by Agway. According to plaintiffs, the SEC

filings failed to disclose that Agway was insolvent, thus deceptively inducing plaintiffs to invest in the Certificates. This Court dismissed the Securities Act claims with prejudice and dismissed the state law GBL § 349 claim without prejudice. The Second Circuit affirmed. *See Pew v. Cardarelli*, 2005 WL 3817472 (N.D.N.Y. Mar. 17, 2005), *aff'd* 164 Fed.Appx. 41 (2d Cir. 2006) ("*Pew I*").

Thereafter, plaintiffs reasserted the GBL § 349 claim by filing the instant complaint in New York State Supreme Court. Defendants removed the action to district court, relying on diversity jurisdiction under the Class Action Fairness Act ("CAFA"). 28 U.S.C. § 1332(d). This Court granted plaintiffs' motion to remand, holding that the case fell within an exception to CAFA jurisdiction for any class action that solely involves "a claim that relates to the rights, duties ... and obligations relating to or created by or pursuant to any security...." 28 U.S.C. § 1332(d)(9)(C). The Second Circuit granted leave to appeal, reversed, and remanded, holding that the exception did not apply. *See Estate of Pew v. Cardarelli*, 2006 WL 3524488 (N.D.N.Y. Dec. 6, 2006), *rev'd* 527 F.3d 25 (2d Cir. 2008) ("*Pew II*").

Upon remand, defendants made the present motion to dismiss the GBL § 349 complaint on a number of grounds (Dkt. No. 24). As set forth below, the Court grants the motion.

## DISCUSSION

The factual background of the case is set forth in the prior decisions and is not repeated here. The Court refers the reader to those decisions. *See Pew v. Cardarelli*, 164 Fed.Appx. 41 (2d Cir. 2006), *aff'g* 2005 WL 3817472 (N.D.N.Y. Mar. 17, 2005) ("*Pew I*"); *Estate of Pew v. Cardarelli*, 527 F.3d 25 (2d Cir. 2008), *rev'g* 2006 WL 3524488 (N.D.N.Y. Dec. 6, 2006) ("*Pew II*"). In particular, the complaint in *Pew II* is summarized at 2006 WL 3524488, *1-3.

**Applicable Law**

Defendants move to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6). In assessing the legal sufficiency of a claim on a motion to dismiss, the Court takes the factual allegations to be true and draws all reasonable inferences in plaintiffs' favor. *Harris v. Mills*, 572 F.3d 66, 71 (2d Cir. 2009). The Court may consider the facts alleged in the complaint, as well as "documents that the plaintiffs either possessed or knew about and upon which they relied in bringing the suit." *Rothman v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000)

The single cause of action in the instant action, *Pew II*, is based on GBL § 349(a), which provides: "Deceptive acts or practices in the conduct of any business, trade or commerce ... are hereby declared unlawful." GBL § 349 is "a powerful remedy for consumer fraud." *Genesco Entm't, a Div. of Lymutt Industries, Inc. v. Koch*, 593 F.Supp. 743, 751 (S.D.N.Y.1984). To state a GBL § 349 claim, a plaintiff must prove three elements: "first, that the challenged act or practice was consumer-oriented; second, that it was misleading in a material way; and third, that the plaintiff suffered injury as a result of the deceptive act." *Stutman v. Chemical Bank*, 95 N.Y.2d 24, 29 (2000). Actionable deceptive acts or practices are "limited to those likely to mislead a reasonable consumer acting reasonably under the circumstances." *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*, 85 NY2d 20, 26 (1995).

**Collateral estoppel**

In moving to dismiss, defendants argue that plaintiffs' GBL § 349 claim is barred by the doctrine of issue preclusion, or collateral estoppel, which bars a party from relitigating an issue that has been resolved in a prior proceeding. *See Colon v. Coughlin*, 58 F.3d 865, 869 (2d Cir. 1995). Under New York law, collateral estoppel will apply if "(1) the issue in question was actually and necessarily decided in a prior proceeding, and (2) the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the first proceeding." *Id.*

-4-

Defendants ask this Court to give preclusive effect in this action to the Second Circuit's holding in *Pew I* that Agway's SEC filings were not misleading within the meaning of section 11 of the Securities Act ("section 11"), 15 U.S.C. § 77k.[1] In *Pew I*, the Second Circuit stated:

> Upon our review of the record, and of plaintiffs' Amended Complaint, we hold that the District Court did not err in concluding that, during the period at issue here, no reasonable investor could have been misled about the nature and extent of the risks associated with investing in Agway Certificates. Even assuming arguendo that defendants failed to disclose "that Agway had virtually no remaining assets and no operating income by which to discharge its obligations and its 'guarantee' with respect to" outstanding Certificate debt, ... Agway's filings are replete with other warnings about the risk of defaulting on the Certificate debt, the subsidiary nature of that debt, Agway's resort to increasingly bleak credit arrangements, the loss of core business assets and operations, and the consequences of a potential bankruptcy. In light of these warnings, any reasonable investor of ordinary sophistication would have been aware of the risk of non-payment on his Agway Certificates, notwithstanding his ignorance of Agway's balance sheet at the time of his initial investment.

164 Fed.Appx. at 44. Clearly, *Pew I* necessarily decided that defendants' representations in the SEC filings were not materially misleading within the meaning of section 11.

Defendants contend that the issue decided in *Pew I*, that is, whether the SEC filings were materially misleading under section 11, is the same as the issue before the Court in the present action, that is, whether Agway's disclosures were "deceptive," "misleading in a material way," *Stutman*, 95 N.Y.2d at 29, or "likely to mislead a reasonable consumer acting reasonably under the circumstances" under GBL § 349. *Oswego Laborers*, 85 NY2d at 26. Therefore, defendants argue, the determination in *Pew I* that the SEC filings were not materially misleading under

---

[1] Section 11(a) of the Securities Act, 15 U.S.C. § 77k(a), provides a private cause of action to any person acquiring a security if "any part of the registration statement ... contained an untrue statement of a material fact ... necessary to make the statements therein not misleading[.]" The test for whether a statement is materially misleading within the meaning of section 11 is not whether particular statements, taken separately, were literally true, but whether defendants' representations, taken together and in context, would have misled a reasonable investor about the nature of the investment. *See Rombach v. Chang*, 355 F.3d 164, 178, n.11 (2d Cir. 2004); *Olkey v. Hyperion 1999 Term Trust, Inc.*, 98 F.3d 2, 5 (2d Cir. 1996).

section 11 precludes plaintiffs from proving in this action that Agway's disclosures were deceptive under GBL § 349, and the complaint must be dismissed.

In opposition, plaintiffs argue that the issue now before the Court is different from the issue decided in *Pew I*, because the standard under GBL § 349 is different from the standard under section 11. According to plaintiffs, *Pew I* "measured adequacy of financial disclosures *vis-à-vis* federal securities law; the GBL § 349 claim measures adequacy of financial disclosures and solicitation materials *vis-à-vis* Agway's unique agricultural cooperative culture and self-imposed standards." Thus, they argue, the holding that the SEC filings are not materially misleading under section 11 is not determinative of whether they are deceptive under GBL § 349(a).

Plaintiffs cite no authority for the proposition that GBL § 349 establishes a different standard for the content of SEC filings than that established by section 11. Nor is the Court aware of any such authority, which, in effect, would compel those preparing SEC filings to satisfy not only the requirements of the Securities Act, but also the requirements of the laws of any number of states. Nor do plaintiffs cite any authority for holding that GBL § 349 imposes an enhanced duty upon defendants with regard to the SEC filings beyond that imposed by the Securities Act. The Court concludes that the holding in *Pew I* that the SEC filings were not materially misleading under the Securities Act collaterally estops plaintiffs from claiming that the SEC filings were materially misleading under GBL § 349.

Plaintiffs further argue that the complaint in the instant action is not based solely on the SEC filings but is also founded on misleading representations made in other contexts.[2] Thus, they argue, the issue decided in the prior case was based on different facts and occurrences than those

---

[2] As noted, a summary of the GBL § 349 complaint is set forth in *Pew II*, 2006 WL 3524488, *1-3, and is not repeated here.

now before the Court, and collateral estoppel does not apply. In support of this argument, plaintiffs cite to the following allegations in the complaint: (1) Agway actively encouraged its members to invest in the Certificates and placed "take-away" brochures on its store counters stating: "Agway, Inc. unconditionally guarantees the payment of principal and interest" on the Certificates; (2) Agway actively promoted the sale of Certificates to its members in mailings concerning their currently-held Certificates; and (3) Agway publicly proclaimed its "Core Values" with statements such as: "We are honest and ethical in our business dealings, knowing that these standards are based on our Cooperative's heritage"; "We are the stewards of our organization's resources and we stand accountable for their use"; and "We shall also be accountable for our stewardship." The Court has also reviewed the pertinent documents submitted by plaintiffs in opposition to the motion, including copies of take-away brochures and a July 1, 2001 letter from defendant Donald P. Cardarelli to shareholders, summarizing recent changes in Agway's financial situation and stating: "We encourage you to consider reinvesting in Agway securities."[3]

The first of these statements is not a misrepresentation. Agway did give an unconditional guarantee of payment of principal and interest on the Certificates; as with any guarantee, however, its value was limited to the guarantor's ability to pay. Statements promoting the Certificates and encouraging shareholders to consider reinvesting in them are not representations at all and cannot be misleading. And the statements that Agway management is "honest and ethical" and stands "accountable" is simply a statement of business philosophy. None of these statements adds anything of significance to the multitude of representations in the SEC filings that

---

[3] Plaintiffs do not assert that any statements in the July 1, 2001 letter regarding Agway's financial situation were false.

have already been found not to be misleading.  Plaintiffs have not shown that the issue now before the Court differs from the issue decided in *Pew I* so as to avoid the application of collateral estoppel.

To conclude on this issue, the determination in *Pew I* that the SEC filings are not misleading under section 11 collaterally estops plaintiffs from claiming that the filings are deceptive under GBL § 349.  The statements made outside the SEC filings are not materially misleading in themselves, do not render the SEC filings misleading, and do not in any manner support a holding that the issue presently before the Court is materially different from the issue decided in *Pew I*.  Defendants' conduct in selling securities whose risks were disclosed cannot support a cause of action for a "deceptive act or practice" within the meaning of GBL § 349.  Accordingly, the complaint fails to state a claim upon which relief may be granted.

**The scope of GBL § 349**

As an alternative ground for dismissal, defendants argue that GBL § 349 does not cover securities transactions.[4]  The scope of GBL § 349 is, of course, a question of state law.  The New York Court of Appeals has not addressed the issue of whether GBL § 349 covers securities transactions.  Where the state's high court has not spoken on a question of state law, "the ruling of an intermediate appellate state court ... is a datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise." *Statharos v. New York City Taxi & Limousine Comm'n*, 198 F.3d 317, 321 (2d Cir. 1999) (citation and internal quotation marks omitted).  As set forth below, the present state of federal and New York case law supports defendants' position.

The Second Circuit has not yet construed GBL § 349 in connection with securities

---

[4] It is undisputed that the Certificates are securities subject to the Securities Act.

transactions. The seminal district court case on the issue is *Morris v. Gilbert*, 649 F. Supp. 1491, 1496-97 (E.D.N.Y. 1986), an action by a customer against a brokerage firm and a salesman in the firm, alleging fraud and other misconduct in connection with the sale of securities. The *Morris* court dismissed the GBL § 349 causes of action on the ground that, as a consumer fraud statute, GBL § 349 was not intended to reach securities-related claims. The court reasoned as follows:

> [P]eople do not generally buy securities in the same way that they buy an automobile, a television set, or the myriad consumer goods found in supermarkets. For one thing, securities are purchased as investments, not as goods to be "consumed" or "used." Additionally, the securities markets are subject to pervasive federal regulation, and it is questionable that New York's legislature intended to give securities investors an added measure of protection beyond that provided by the securities acts[.]

*Id.* at 1497.

District court decisions in this circuit uniformly apply *Morris* and its progeny to reject GBL § 349 claims based on securities transactions. *See, e.g., Kassover v. UBS AG*, 619 Fed.Supp.2d 28, 37, n.4 (S.D.N.Y. 2008); *In re Evergreen Mut. Funds Fee Litigation*, 423 F.Supp.2d 249, 264-65 (S.D.N.Y. 2006); *In re Eaton Vance Mut. Funds Fee Litigation*, 380 F.Supp.2d 222, 240 (S.D.N.Y. 2005), *aff'd Bellikoff v. Eaton Vance Corp.*, 481 F.3d 110 (2d Cir. 2007); *In re Sterling Foster & Co., Inc., Securities Litigation*, 222 F.Supp.2d 216, 285-86 (E.D.N.Y. 2002); *Cyber Media Group, Inc. v. Island Mortgage Network, Inc.*, 183 F.Supp.2d 559, 581 (E.D.N.Y. 2002); *Spirit Partners LP v. audiohighway.com*, 2000 WL 685022, *6-7 (S.D.N.Y. May 25, 2000); *Redtail Leasing, Inc. v. Bellezza*, 1997 WL 603496, *6 (S.D.N.Y. Sept. 30, 1997); *In re Motel 6 Securities Litig.*, 1995 WL 431326, *6-7 (S.D.N.Y. July 20, 1995); *Glick v. Berk & Michaels, P.C.*, 1991 WL 152614, *14-15 (S.D.N.Y. 1991).

The weight of authority in New York State intermediate appellate courts also holds that GBL § 349(a) does not cover securities transactions. The First Department and Third Departments, applying *Morris*, consistently so hold. *See, e.g., Dweck v. Oppenheimer & Co.*, 816

N.Y.S.2d 440, 441 (1st Dep't 2006); *Gray v. Seaboard Securities, Inc.*, 788 N.Y.S.2d 471, 472-73 (3d Dep't 2005); *Fesseha v. TD Waterhouse Investor Servs., Inc.*, 761 N.Y.S.2d 22, 23-24 (1st Dep't 2003); *In re Dean Witter Managed Futures Ltd. P'ship* (1st Dep't 2001); *Schwarz v. Bear Stearns Cos.*, 698 N.Y.S.2d 855 (1st Dep't 1999). The precedential meaning of the few contrary decisions in the Second and Fourth Departments is unclear, and they do not provide a significant counterweight to the First and Third Department cases.[5] In view of the weight of authority in the New York intermediate appellate courts holding that GBL § 349 does not apply to securities

---

[5] In *Board of Managers of Bayberry Greens Condominium v. Bayberry Greens Assocs.*, 571 N.Y.S.2d 496 (2d Dep't 1991), which alleged deceptive practices in the advertisement and sale of condominium units, the Second Department permitted a GBL § 349 cause of action to go forward. The *Bayberry* court held simply that GBL § 349 "permits a private cause of action, and the amended complaint alleged deceptive practices by the appellants in the advertisement and sale of the condominium units"; the court made no mention of securities transactions. *Id.* at 497. The Fourth Department then decided *Breakwaters Townhomes Assn. of Buffalo, Inc. v. The Breakwaters of Buffalo, Inc.*, 616 N.Y.S.2d 829, 829-30 (4th Dep't 1994), citing only *Bayberry* as authority for rejecting as "lack[ing] merit" the argument that the GBL § 349 cause of action "should be dismissed because securities transactions do not come within the ambit of" GBL § 349. The decision gave no information regarding the nature of the transaction in issue. Next, the Second Department cited both *Bayberry* and *Breakwaters* in declining to dismiss a GBL § 349 cause of action alleging deceptive practices in the sale of securities in a cooperative corporation to residential shareholders. *B.S.L. One Owners Corp. v. Key Int'l Mfg., Inc.*, 640 N.Y.S.2d 135, 137 (2d Dep't 1996). It appears that *Bayberry*, *Breakwaters*, and *B.S.L.* involve transactions which are not investments and/or not subject to federal securities laws, and are distinguishable from the *Morris* line of cases on that ground. *See Schwarz v. Bear Stearns Co., Inc.*, 1998 WL 672708, *1 (N.Y.Sup. Aug. 24, 1998), *aff'd* 698 N.Y.S.2d 855 (1st Dep't 1999) (distinguishing *Breakwaters* from *Morris* on the ground that "*Breakwaters* involved shares in a cooperative housing corporation rather than publicly traded securities."); *see also Revak v. SEC Realty Corp.*, 18 F.3d 81, 86 (2d Cir. 1994) (holding that condominium transactions were "not investment contracts, and therefore are not securities for purposes of the federal securities laws."). However, the summary nature of the decisions leaves their precedential meaning unclear.

Thereafter, in 1998, the Fourth Department dismissed a GBL § 349 claim brought by owners of shares of preferred stock in defendant corporation. *See Smith v. Triad Mfg. Group, Inc.*, 681 N.Y.S.2d 710, 712 (4th Dep't 1998). The *Smith* court quoted *Morris* for the proposition that "securities are purchased as investments, not as goods to be consumed or used," 649 Fed.Supp. at 1497 (quotation marks omitted), and did not acknowledge its contrary statement in *Breakwaters*. Then in 2001, the Fourth Department decided *Scalp & Blade, Inc. v. Advest, Inc.*, 722 N.Y.S.2d 639 (4th Dep't 2001), an action against an investment advisor and the firm for which he worked. The court upheld plaintiffs' GBL § 349 claim, stating, "we see no basis for invoking any blanket exception under the statute for securities transactions[,]" citing *Breakwaters*. The decision makes no mention of *Smith*. Except for *Breakwaters*, the *Scalp & Blade* court cites no state or federal case involving securities transactions. As such, the precedential significance of *Smith* on the one hand and *Scalp & Blade* on the other is uncertain.

-10-

transactions, and the many district court decisions in this circuit interpreting New York law and reaching the same conclusion, this Court sees no basis to hold that the New York's high court would decide otherwise.

The Court is not aware of any reason why the holding in *Morris* and its progeny should not apply in this case. Plaintiffs argue that the case at bar should be distinguished from the cases discussed above on the ground that the Certificates in issue were not publicly traded. Plaintiffs cite no authority in support of the argument, nor does the Court discern any basis for such a distinction; it is clear from *Pew I* that the Certificates were subject to extensive federal regulation under the Securities Act. The rationale in *Morris*, *i.e.*, that securities "are qualitatively different in the manner and purpose of their purchase from more traditional consumer items," 649 F.Supp. at 1491, applies equally to publicly and non-publicly traded securities. Nor can it reasonably be argued that the Certificates were not investments within the meaning of the case law.

Plaintiffs' argument that the Second Circuit impliedly rejected the *Morris* rationale when it decided *Riordan v. Nationwide Mut. Fire Ins. Co.*, 977 F.2d 47, 52 (2d Cir. 1992) lacks merit. *See In re Motel 6*, 1995 WL 431326 at *7 (holding that the *Riordan* plaintiffs, individual purchasers of insurance coverage, were consumers, and noting that, "[u]nlike securities transactions ... insurance sold to consumers is not pervasively regulated at the federal level."). Further, the broad statement in *Karlin v. IVF Am., Inc.* that GBL § 349 applies to "virtually all economic activity," made in the context of an action against medical services providers, does not warrant departure from the *Morris* rule. 93 N.Y.2d 282, 290 (1999). Indeed, many of the district court and appellate division cases applying the *Morris* rationale post-date *Riordan* and *Karlin*. Plaintiffs raise no other valid ground for distinguishing this case from the *Morris* line of cases. The Court concludes that the present claim is outside the reach of GBL § 349; thus, the complaint

does not state a claim upon which relief may be granted.

## CONCLUSION

It is therefore

ORDERED that defendants' motion (Dkt. No. 24) is granted; and it is further

ORDERED that the complaint is dismissed with prejudice.

IT IS SO ORDERED.

September 29, 2009
Syracuse, New York

_____
Norman A. Mordue
Chief United States District Court Judge